FILED

MAY 28 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-12-1373-TaPaMk |
| ) | |
| JERMAINE SINCLAIR, ) | Bk. No.   09-23178-BR |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JERMAINE SINCLAIR, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| BANK OF AMERICA, N.A., in its ) | |
| own capacity and as successor ) | |
| by merger to BAC HOME LOANS ) | |
| SERVICING, LP and BANK OF ) | |
| NEW YORK MELLON FKA BANK ) | |
| OF NEW YORK, AS TRUSTEE FOR ) | |
| THE CERTIFICATEHOLDERS CWALT, ) | |
| INC., ALTERNATIVE LOAN TRUST ) | |
| 2006-OC11, MORTGAGE ) | |
| PASS-THROUGH CERTIFICATES, ) | |
| SERIES 2006-OC11, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted Without Oral Argument[**]
on May 16, 2013

Filed - May 28, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] Appellant Jermaine Sinclair did not appear at oral argument. While Appellees offered to present argument, the appeal is deemed submitted without oral argument.

1

Appearances:     Appellant Jermaine Sinclair, pro se, on brief;
                 Christopher Rivas of Reed Smith LLP, on brief for
                 Appellees.

Before:  TAYLOR, PAPPAS, and MARKELL, Bankruptcy Judges.

## INTRODUCTION[1]

Appellant and debtor Jermaine Sinclair ("Sinclair") appeals from the bankruptcy court's order granting retroactive annulment of the automatic stay under § 362(d)(1)[2] to appellees Bank of America, N.A. ("BOA"), in its own capacity and as successor by merger to BAC Home Loans Servicing, LP ("BAC"),[3] and The Bank of New York Mellon FKA The Bank of New York ("BONYM"), as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OC11, Mortgage Pass-Through Certificates, Series 2006-OC11 (collectively, the "Appellees").  We AFFIRM the bankruptcy court's order.

## FACTS

In 2006, Sinclair's grandmother, Gloria H. Spence ("Spence"), obtained a loan secured by real property located in Houston, Texas (the "Property").  Spence eventually defaulted on

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] The bankruptcy court's order annulling the stay identifies § 362(d)(1) and (d)(2) as the grounds for relief.  But it exclusively addressed "cause" under § 362(d)(1) and did not refer to § 362(d)(2).  Thus, we solely review the order annulling the stay under § 362(d)(1).

[3] BAC was formerly known as Countrywide Home Loans Servicing LP ("Countrywide").

2

the promissory note evidencing the loan.

In May 2009, Spence executed and recorded a grant deed purporting to grant a 25% interest in the Property to Sinclair.[4] There was no evidence of consideration for the transfer and no consent by the secured lender. Approximately two weeks later, BAC, through the law firm of Barrett Daffin Frappier Turner & Engel, LLP ("Barrett Daffin"), notified Spence that a foreclosure sale was scheduled for July 7, 2009.

On May 29, 2009, Sinclair filed a chapter 13 bankruptcy petition in the Central District of California; his case was converted to chapter 7 shortly thereafter. Sinclair listed ten real properties on his amended Schedule A, including the Property. He also scheduled Countrywide and Barrett Daffin as creditors and listed them on his creditor mailing list.

Unaware of Sinclair's purported interest in the Property or of his bankruptcy filing, the Appellees conducted the foreclosure sale on July 7, 2009, and BONYM purchased the Property. After learning of the transfer and bankruptcy, BONYM promptly moved to annul the stay so as to validate the foreclosure. Before that matter could be heard, however, the bankruptcy court administratively dismissed Sinclair's case on October 20, 2009, for Sinclair's failure to attend the § 341(a) meeting of creditors. No party contested the dismissal, and Sinclair's bankruptcy case was closed on January 28, 2010.

In March 2011, Sinclair and three other family members,

---

[4] Apparently, Spence also conveyed partial interests in the Property to other family members.

3

including Spence, commenced an action against the Appellees in the Texas state court. Among other things, they alleged a violation of the automatic stay in Sinclair's bankruptcy case and sought damages and injunctive relief seeking to compel a loan modification. The Appellees removed the action to the federal district court in Texas and moved to dismiss the case.

The Appellees waited until April 13, 2012, to address the stay violation by filing an ex-parte application to reopen Sinclair's bankruptcy case and moving for retroactive annulment of the stay. The bankruptcy court promptly granted the Appellees' application to reopen Sinclair's bankruptcy case. But it did not vacate the order dismissing Sinclair's case.

In response, Sinclair disputed that he filed his bankruptcy petition in bad faith and asserted that the foreclosure sale was malicious, unethical, and violated state and federal laws. The Appellees replied that Sinclair filed his bankruptcy case in bad faith, which established cause to annul the stay under § 362(d)(1).

The hearing came before the bankruptcy court on June 26, 2012. The bankruptcy court determined that Sinclair's bankruptcy was a bad faith case and, accordingly, that cause existed to grant stay relief. On July 6, 2012, it entered an order annulling the automatic stay retroactively. Sinclair timely appealed.

## JURISDICTION

As discussed further below, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

4

**ISSUES**

1. Did the bankruptcy court have jurisdiction to annul the automatic stay retroactively?

2. Did the bankruptcy court err when it annulled the automatic stay retroactively?

**STANDARD OF REVIEW**

We examine jurisdictional issues de novo. <u>Kirton v. Valley Health Sys. (In re Valley Health Sys.)</u>, 471 B.R. 555, 562 (9th Cir. BAP 2012).

The bankruptcy court's decision to annul the automatic stay retroactively is reviewed for abuse of discretion. <u>Fjeldsted v. Lien (In re Fjeldsted)</u>, 293 B.R. 12, 18 (9th Cir. BAP 2003). An evaluation of abuse of discretion is a two-prong test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for application. See <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If not, then the bankruptcy court necessarily abused its discretion. <u>See id.</u> at 1262. Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in the record. <u>See id.</u>

We may affirm on any basis on the record. See <u>Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)</u>, 481 B.R. 34, 44 (9th Cir. BAP 2012).

///

///

///

5

**DISCUSSION**

**A.    The bankruptcy court possessed "arising under" jurisdiction to annul the automatic stay retroactively.**

Neither Sinclair nor the Appellees expressly raise the issue of the bankruptcy court's jurisdiction to consider and grant the Appellees' requested relief.  Nonetheless, we have an independent duty to consider jurisdictional issues.  <u>Aheong v. Mellon Mortgage Co. (In re Aheong)</u>, 276 B.R. 233, 239 (9th Cir. BAP 2002).  We conclude that the bankruptcy court had "arising under" jurisdiction to consider the Appellees' motion and to annul the stay retroactively notwithstanding prior dismissal of the case.

In relevant part, 28 U.S.C. § 1334(b) provides that bankruptcy jurisdiction includes all civil proceedings "arising under" the Bankruptcy Code, or "arising in" or "related to" a bankruptcy case.  "Arising under" jurisdiction includes proceedings based on a right or cause of action created by the Bankruptcy Code.  <u>In re Aheong</u>, 276 B.R. at 243.

Post-dismissal bankruptcy jurisdiction is generally limited.  The bankruptcy court retains jurisdiction to dispose of ancillary matters, including construing and interpreting its orders.  <u>Id.</u> at 241.  It may not, however, "grant new relief independent of its prior rulings once the underlying action has been dismissed."  <u>Tsafaroff v. Taylor (In re Taylor)</u>, 884 F.2d 478, 481 (9th Cir. 1989) (citing <u>Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)</u>, 699 F.2d 963, 964 (9th Cir. 1982)); <u>see also</u> <u>Beneficial Trust Deeds v. Franklin (In re Franklin)</u>, 802 F.2d 324, 327 (9th Cir. 1986).

Notwithstanding, proceedings to annul the stay after the

6

underlying bankruptcy case is dismissed fall within the ambit of "arising under" bankruptcy jurisdiction. In re Aheong, 276 B.R. 233 at 248; accord Johnson v. TRE Holdings LLC (In re Johnson), 346 B.R. 190, 194 (9th Cir. BAP 2006) (bankruptcy court may annul the stay after the bankruptcy case is dismissed). In Aheong, the panel majority determined that "arising under" jurisdiction did not depend on the existence of an active bankruptcy case. Id. at 244-45. It also distinguished In re Taylor and In re Income Prop. Builders as cases involving requests for prospective, not retroactive, relief from stay. Id. at 246-47.

Here, the bankruptcy court reopened Sinclair's bankruptcy case, but did not vacate the order dismissing his case. Nonetheless, we determine that the bankruptcy court had "arising under" jurisdiction over the Appellees' motion. See id. at 250. To the extent the bankruptcy court retains jurisdiction to address stay violations and sanctions, it follows that the bankruptcy court also retains jurisdiction to annul the stay retroactively. Id. at 249.

**B.   Sinclair's appeal is not equitably moot.**

The Appellees assert that Sinclair's appeal is equitably moot and, thus, that we lack jurisdiction to entertain the appeal. Sinclair neither submitted a reply brief nor appeared at oral argument and, thus, did not respond to this argument.

We will not entertain an appeal that is moot. See Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 779-880 (9th Cir. 2012). Equitable mootness looks beyond the existence of redressability to the availability and consequences of effective relief. Clear

7

_Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)_, 391 B.R. 25, 33 (9th Cir. BAP 2008) (citation omitted).

To determine whether an appeal is equitably moot, we examine whether a stay pending appeal was sought, "for absent that a party has not fully pursued its rights." _In re Thorpe Insulation Co._, 677 F.3d at 881. _But see_ _Suter v. Goedert_, 504 F.3d 982, 990-91 (9th Cir. 2007) (failure to seek stay pending appeal does not moot appeal where the debtor has state law remedies to set aside or undo the transaction at issue). We further consider: (1) whether there has been substantial consummation of the appealed plan (or order); (2) the effect, if any, on third-parties not before the court; and (3) whether the court may fashion effective and equitable relief without undoing the plan (or order) and creating an uncontrollable situation. _In re Thorpe Insulation Co._, 677 F.3d at 881.

Fundamentally, the central inquiry in an equitable mootness analysis is whether there has been a comprehensive change of circumstances such that it is inequitable or impractical to consider the merits of the appeal. _In re PW, LLC_, 391 B.R. at 33 ("Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable."). The party asserting mootness bears the heavy burden of establishing a lack of effective relief. _Id._ at 34.

We conclude that Sinclair's appeal is not equitably moot. Sinclair did not apply for a stay pending appeal; but that is irrelevant given that the foreclosure sale occurred almost four years ago, Appellee BONYM acquired the Property, and there is no evidence of further disposition of the Property. The Appellees

8

have neither asserted nor shown that any changes have occurred since the bankruptcy court entered the order annulling the stay retroactively, let alone that the changes were comprehensive. Consequently, they have not met their burden of showing a comprehensive change of circumstances such that it is inequitable or impractical for us to consider the appeal. Therefore, the appeal is not moot.

**C. The bankruptcy court did not abuse its discretion in annulling the automatic stay.**

On appeal, Sinclair argues that the foreclosure sale is void because it violated the automatic stay. Indeed, it is well-established that violations of the automatic stay are void. <u>See Schwartz v. United States (In re Schwartz)</u>, 954 F.2d 569, 571 (9th Cir. 1992). Neither party seriously challenges that the foreclosure sale occurred after Sinclair filed his bankruptcy petition or that the sale violated the automatic stay, which rendered the sale void. Sinclair, however, does not address the bankruptcy court's ability to annul the stay retroactively or the effect of such relief.

Section 362(d) provides authorization to annul the automatic stay, which, in effect, retroactively ratifies or validates acts that otherwise violated the stay. <u>Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)</u>, 328 B.R. 158, 172 (9th Cir. BAP 2005). Determining whether cause exists to annul the stay retroactively is a case-by-case inquiry based on a balance of the equities. <u>Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)</u>, 129 F.3d 1052, 1055 (9th Cir. 1997). In making this determination, the bankruptcy court considers

12 factors, including the debtor's overall good faith under a totality of the circumstances; whether the creditor was aware of the stay but nonetheless took action; how quickly the creditor moved for annulment, or how quickly the debtor moved to set aside the violative sale; whether, after learning of the bankruptcy, the creditor proceeded to take steps in continued violation of the stay, or whether it moved expeditiously to gain relief; and the extent of prejudice to creditors or third parties if the stay relief is not made retroactive. In re Fjeldsted, 293 B.R. at 25 (incorporating the two factors discussed in In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055). These factors, however, "are merely a framework for analysis and not a scorecard," and thus, "[i]n any given case, one factor may so outweigh the others as to be dispositive." Id.

Here, the bankruptcy court implicitly balanced the circumstances of Sinclair's bankruptcy filing against the Appellees' violative conduct. It found that Sinclair filed his bankruptcy case in bad faith and that this established sufficient cause to annul the stay retroactively under § 362(d)(1). In so finding, the bankruptcy court inherently determined that, under the totality of the circumstances, Sinclair's lack of good faith outweighed the Appellees' stay violation. The record supports its findings.

The record shows that Sinclair filed his bankruptcy petition three weeks after Spence purportedly transferred a partial interest in the Property to Sinclair and just one week after the Appellees notified Spence about the scheduled foreclosure sale. There is no evidence that Sinclair provided consideration for the

10

transfer of an interest in the Property or that either Spence or he obtained the lender's consent. Appellee BONYM promptly moved for retroactive stay relief in 2009 after learning of Sinclair's interest in the Property and his subsequent bankruptcy filing, but failed to obtain relief due to the case dismissal. Construed as a whole, these circumstances support the bankruptcy court's determination.

Sinclair argues that the Appellees were on notice of his bankruptcy filing as he listed Countrywide and Barrett Daffin on his creditor mailing list. While it is true that he scheduled the Property, Countrywide, and Barrett Daffin, and included the bank and law firm on his creditor mailing list, nothing in the record shows that he contacted or notified the bank or the law firm about his interest in the Property or subsequent bankruptcy filing. It is unclear how the Appellees would have made the connection between the Property and Sinclair when Spence – not Sinclair – was the borrower. This factor, thus, either supports the bankruptcy court's determination or, at best for Sinclair, is neutral.

Based on the foregoing, the bankruptcy court's finding was not illogical, implausible, or without support from the record. As such, it did not err in determining that Sinclair's bad faith filing established cause to annul the stay. See In re Fjeldsted, 293 B.R. at 25 (any one factor may outweigh the other factors so as to be dispositive). Therefore, the bankruptcy court did not abuse its discretion in annulling the automatic stay retroactively.

///

**CONCLUSION**

Based on the foregoing, we AFFIRM.