**In re SPI COMMUNICATIONS & MARKETING, INC., Debtor.**

**Lee E. WOODARD, Trustee, Plaintiff,**

and

**Frank Sicilia and Nicholas Buccina, Intervenors,**

v.

**Roy S. SANDERS, Defendant.**

**In re ABS COMMUNICATIONS, INC., Debtor.**

**Lee E. WOODARD, Trustee, Plaintiff,**

and

**Henry T. Wilcox, Jr. and Gary W. Wolczanski, Intervenors,**

v.

**Roy S. SANDERS, Defendant.**

**Misc. Nos. 2541, 2542.**

United States District Court, N.D. New York.

May 11, 1990.

Lee E. Woodard, Baum & Woodard, Syracuse, N.Y., for plaintiff.

James A. Resti, Syracuse, N.Y., for intervenors.

Nancy L. Pontius, MacKenzie, Smith, Lewis, Michell & Hughes, Syracuse, N.Y., for defendant.

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

This decision is a final ruling on a Report and Recommendation from Bankruptcy Judge Honorable Stephen D. Gerling pursuant to Bankruptcy Rules 5011 and 9033. Judge Gerling has recommended that discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) is warranted from adversary complaints brought by third party intervenors in two related bankruptcy proceedings.

## FACTS

SPI Communications and ABS Communications were related but separate corporations which simultaneously filed for relief and protection under Chapter 11 of the Bankruptcy Code on May 7, 1987. These Chapter 11 cases were converted to Chapter 7 cases on motion of the U.S. Trustee and by Order of the Bankruptcy Court on February 5, 1988. During this time both corporations were represented by Roy S. Sanders, Esq. (Sanders).

Shortly thereafter, the Chapter 7 Trustee for the Debtor-corporations, Lee E. Woodard, Esq., brought adversary complaints against Sanders in each bankruptcy proceeding. It is alleged that prior to the conversion from Chapter 11 to Chapter 7, the two corporations were on the verge of consummating a business deal which would have generated profits sufficient to pay the corporations' creditors completely, and presumably restore the corporations to financial health. The Trustee's complaints allege that Sanders, through a pattern of inactivity and failure to follow the debtors' directions, negligently allowed the Bankruptcy Court to convert the Chapter 11 proceedings to Chapter 7 proceedings. The consequent seizure and liquidation of the corporations' assets under Chapter 7 resulted in the business deal being voided. Essentially, the adversary proceedings against Sanders sound in legal malpractice.

Thereafter, the principals of each corporation [1] moved to intervene as parties-plaintiff in the adversarial malpractice proceedings. On October 18, 1989 Judge Gerling granted the motion and allowed the intervention subject to the defendant Sanders' right to make motions addressed to the subject matter jurisdiction of the Bankruptcy Court to hear the Intervenors' claims. The Intervenors then filed complaints against Sanders which are virtually identical to those filed by the Trustee.

The defendant then moved to have all of the adversary proceedings dismissed because they could not be considered "core" proceedings under the Bankruptcy Code, 28 U.S.C. § 157(b)(2), and therefore the Bankruptcy Court's exercise of jurisdiction over these "non-core" claims would be violative of Article III of the Constitution. The de-

---

**1.** The principals are Frank Sicilia and Nicholas Buccina for SPI Communications and Henry T. Wilcox, Jr. and Gary W. Wolczanski for ABS Communications. They are described in the pleadings as officers, shareholders, guarantors and obligors of their respective corporations.

fendant relied on *Northern Pipeline Construction Company v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and *Granfinanciera, S.A. v. Nordberg*, — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) for the proposition that the adversary proceedings were outside of the Constitutional reach of the Bankruptcy Court. The defendant further argued that if the adversary proceedings were found to be "core" proceedings and properly before the Bankruptcy Court, the Court should abstain from considering the claims because of its prior involvement in the proceedings. In the event both arguments were denied, the defendant asked that the proceedings be consolidated since they involve common issues of law and fact. The defendant asked for a jury trial on the adversarial claims.

The Trustee opposed the motion. The Intervenors have failed to file any papers or to appear in opposition.

In a Memorandum–Decision dated March 9, 1990, Judge Gerling ruled that the Trustee's complaint was a "core" proceeding and within the jurisdiction of the Bankruptcy Court. 112 B.R. 507. He further ruled that the defendant was entitled to and that the Bankruptcy Court could properly hold a jury trial on the Trustee's claims. The Court further held that abstention was inappropriate as to the Trustee's complaints since the interests of justice would best be served holding the trial in the Bankruptcy Court.

As to the Intervenor's complaints, however, the Court took an entirely different tack. The Court also held, virtually in passing, that the Intervenors' complaints were "non-core". Because of this "non-core" status, the Court determined that consent of all parties to jurisdiction was required before these claims could proceed to trial at the bankruptcy court level. The Court held that without the parties' consent, a bankruptcy court may only make a recommendation on such claims subject to the district court's review. 28 U.S.C. § 157(c). Since the defendant requested and is entitled to a jury trial on the Intervenors' malpractice claims, and since such

a jury trial in Bankruptcy Court could only result in a non-final determination, the Court ruled that any district court review would violate the seventh amendment ("no fact tried by jury, shall otherwise be re-examined in any Court ..."). Therefore, the Court held that absent consent to jurisdiction, abstention from hearing the Intervenors' claims would be appropriate. Judge Gerling gave Sanders and the Intervenors fifteen days to submit their consent to jurisdiction before the Bankruptcy Court pursuant to 28 U.S.C. § 157(c)(2). When no such consent was forthcoming, Judge Gerling issued the Report and Recommendation, dated April 10, 1990, recommending abstention from hearing the Intervenors' complaints against Sanders.

No party has filed objections to Judge Gerling's Report and Recommendation pursuant to Bankruptcy Rule 5011(b).

### Standard of Review

The procedure to be followed when dealing with the issue of abstention is contained in Bankruptcy Rule 5011(b), which states, in pertinent part:

Unless a district judge orders otherwise, a motion for abstention pursuant to 28 USC § 1334(c) shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion ... Review of the report and recommendation by the district court shall be governed by Rule 9033.

Rule 9033(d) governs the standard of review:

The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

The Advisory Committee Notes to this Rule states that 9033(d) adopts the review provisions of Fed.R.Civ.P. 72(b), which pro-

vides for district court review of dispositive motions by United States magistrates. The Advisory Committee notes to Fed.R. Civ.P. 72(b) state that the rule requires that a district court judge make a de novo review of those portions of the report and recommendation to which timely objection has been made. When no timely objection is filed, the Notes state that "the court need satisfy itself that there is no clear error on the face of the record in order to accept the recommendation".

Since no objections have been timely filed, therefore, this Court need only apply a "clearly erroneous" standard in reviewing the Report and Recommendation.

## DISCUSSION

As described by Judge Gerling in the April 10, 1990 Report and Recommendation, the two main issues which underlie the recommended abstention are, 1) whether the malpractice claims are "core proceedings under 28 U.S.C. § 157(b)(2) and 2) if so, whether the Bankruptcy Court has the authority to conduct a jury trial on these claims.

28 U.S.C. § 157(b)(2) provides the statutory basis of a bankruptcy judge's authority to hear various claims. This section gives bankruptcy courts authority to hear "core" proceedings:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgements, subject to review under section 158 of this title.

The bankruptcy judge is given the authority to make the threshold determination of whether the claims before him are "core", or within these statutory boundaries, in 28 U.S.C. § 157(b)(3):

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsec-

tion or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

These two sections have been interpreted to divide generically into two categories the types of claims which come before the bankruptcy court: core proceedings, which "arise under" or "arise in" the Bankruptcy Code, and non-core proceedings, which include cases which may be "otherwise related to" the main bankruptcy case. With core claims, bankruptcy judges are empowered to enter judgements and orders subject to traditional appellate review by a district court. With non-core "related" claims, bankruptcy court determinations are subject to de novo review by the district court, 28 U.S.C. § 157(c)(1).

A non-exclusive list of core proceedings is provided in 28 U.S.C. § 157(b)(2)(A)–(O). The actions for malpractice against Sanders appear to be arguably includable as core proceedings under § 157(b)(2)(A): "matters concerning the administration of the estate" [2]. While the Second Circuit has announced that this provision should be interpreted broadly, *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1399 (2d Cir.1990), it was also recognized that a literal translation of this provision would include as a core proceeding almost any matter relating to a bankruptcy, and such a reading would render the remainder core categories contained in § 157(b)(2)(B)–(O) superfluous. *Id.* Such a literal reading would also eradicate any difference between core and non-core "related" claims, rendering all of § 157 meaningless. Therefore, core category § 157(b)(2)(A) is limited to the extent that "[m]atters that merely concern the administration of the bankrupt estate tangentially are related, non-core proceedings." *Ben Cooper*, 896 F.2d at 1398; *In re Wood*, 825 F.2d 90, 96 (5th Cir.1987).

---

**2.** This is one of the categories found by the Court below to apply to the Trustee's claims against Sanders.

18

In the holding below, the Trustee's malpractice claim against Sanders was held to be core, while the Intervenors' *identical* claim against the same party was found to be non-core. This result strikes this Court to be an anomaly. While the Bankruptcy Court's Memorandum–Decision contains a thorough analysis of why the Trustee's claims should be core proceedings, there is no discussion concerning the relegation of the Intervenors' claims to non-core status. This Court, in reviewing the record and applicable law, finds no such dichotomy between the Trustee's and the Intervenors' claims is warranted.

This Court has considered a tangible difference in the posture of the Intervenors' and the Trustee's claims by which the Bankruptcy Court *might* have based its decision. The Trustee's claims are on behalf of the Debtors, and any damages awarded will go directly to the Debtors' estate. The Intervenors' claims, by contrast, are third party actions between principals/guarantors/obligors of the Debtor Corporations and Sanders. Any damage awards will therefore flow initially from one third party to another, and not involve the Debtors, the Debtors' estates, or any creditors. In this sense, it might be argued that the Intervenors' claims are not core. "Whatever else a core proceeding must be, it must involve a decision that ultimately affects the distribution of the Debtor's assets". *Howell Hydrocarbons v. Adams*, 897 F.2d 183, 190 (5th Cir.1990).

In the circumstances presented here, this is a distinction without a difference. To the extent that the Intervenors are guarantors and obligors of the Debtors, damages awarded to the Intervenors will ultimately flow to the same places as damages awarded to the Debtors in their parallel actions: to the creditors. When money goes to the creditors, the estate is benefitted. Benefit to the estate, in conjunction with a nexus in the subject bankruptcy proceeding, is a characteristic of a core proceeding. *See In re Turner*, 724 F.2d 338 (2d Cir.1983) (no suggestion that proceeds of claim brought by Debtor in her own name would reach creditor: claim deemed non-core); *In re Hardwicke Companies Inc.*, 64 B.R. 113

(S.D.N.Y.1986) (legal malpractice action against debtor's attorney, if successful, "would confer a major benefit on the debtor's estate").

There is no question that the Intervenors' claims bear heavily on the administration of the Debtors' estates. The claims, after all, deal solely with an attorney's alleged malpractice in the twin bankruptcy proceedings. As the Court below observed, "the allegations of the [malpractice] Complaints allege a direct causal link between Sanders' legal representation of the former Debtors' cases and the subsequent fundamental change affecting debtor-creditor relations as a result of the conversion of their cases from Chapter 11 reorganization to Chapter 7 liquidation." The Intervenors' claims are inextricably connected to the bankruptcy proceeding, and this Court sees no bar, statutory, constitutional, or otherwise, to the Bankruptcy Court exercising jurisdiction over the Intervenors' claims as core proceedings. Additional weight to this consideration is provided by the facts that the Intervenors' claims arose post-petition, and that the claims would not exist but for the Debtors' bankruptcy petitions. The Second Circuit has identified these two factors as pivotal in determining whether a proceeding is core. *Ben Cooper, supra*, 896 F.2d at 1400, *Cf. In re Harbor Park Associates*, 112 B.R. 555 (S.D.N.Y.1990), *In re Stockert Flying Service, Inc.*, 74 B.R. 704 (N.D.Ind.1987).

For the reasons given above, this Court holds that the Intervenors' claims are core proceedings pursuant to § 157(b)(2). Further, this Court agrees with the Bankruptcy Court that, in accordance with the Second Circuit's *Ben Cooper* decision, the Bankruptcy Court may properly conduct a jury trial on these core claims.

Finally, since this Court has determined that the Intervenor's claims are core proceedings, the abstention issue is moot.

The Report and Recommendation of the Bankruptcy Court is therefore rejected and the cases are returned to the Bankruptcy

Court to proceed in a manner not inconsistent with this Order.