**In re ROGER J. AU & SON, INC., Debtor.**

**ROGER J. AU & SON, INC. and Charles H. Au, Plaintiffs,**

**v.**

**AETNA CASUALTY & SURETY CO., Defendant.**

Bankruptcy No. 683–00985.
Adv. No. 686–0114.

United States Bankruptcy Court, N.D. Ohio.

Oct. 22, 1990.

As Amended Oct. 29, 1990.

Larry L. Inscore, Inscore, Rinehardt, Whitney & Enderle, Mansfield, Ohio, for plaintiffs.

Edward R. Brown, Arter & Hadden, Cleveland, Ohio, for defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

In yet another twist in the extremely convoluted history of this case, plaintiff Charles H. Au (Au) moves the court to declare whether this adversary proceeding, in its present posture, constitutes a core proceeding, a non-core related proceeding, or is completely outside the boundaries of this court's jurisdiction. The motion was filed August 20, 1990. At a hearing on a related matter on August 23, 1990, counsel for defendant was given leave to respond. Said response was filed September 14, 1990 and a reply by plaintiff followed on September 19, 1990.

This court is authorized to determine whether this adversary proceeding is core or non-core pursuant to 28 U.S.C. § 157(b)(3). One treatise has also cited 28 U.S.C. § 157(b)(3) for the "universally accepted" principle that a bankruptcy court has the power to determine its own jurisdiction. 1 Collier on Bankruptcy, 3.01(2)(c) (15th Ed.1989) This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

The complaint initiating this adversary proceeding was originally filed in the Richland County Common Pleas Court by Au and Roger J. Au & Son, Inc. (Au, Inc.) (collectively, Plaintiffs) against Aetna Casualty & Surety Co. (Aetna) and removed to the United States District Court by Aetna. The matter was referred to this court by order of May 29, 1986.

Aetna moved to withdraw the reference to the bankruptcy court on August 8, 1988 on the basis that the complaint involved a related proceeding. Judge David D. Dowd determined that the matter was a core proceeding.[1] On August 19, 1988, Plaintiffs moved to amend the complaint, which Aetna opposed. The amendment issue lay dormant for nearly two years while other matters of dispute between the parties moved forward. On January 4, 1990, this court confirmed an amended plan of reorganization sponsored by Aetna, which confirmation order was promptly appealed by Plaintiffs. The plan provided, *inter alia*, for the release of all claims and counterclaims as between Au, Inc. and Aetna. On June 29, 1990, Aetna consented to the filing of the amended complaint and filed its answer. On July 2, 1990, a stipulation was entered dismissing all claims and counterclaims in this adversary proceeding as between Au, Inc. and Aetna. Therefore, what remains in this proceeding are the claims and counterclaims of Au and Aetna.

Plaintiffs' amended complaint avers that it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Au as individual Plaintiff is asserting a right to relief jointly and severally arising out of the same transaction as alleged by Au, Inc. Count 1 avers that Aetna, a surety for Au, Inc. on various construction projects, executed four separate agreements with Plaintiffs during the period 1978–1983.[2] In each

---

**1.** The court is somewhat handicapped in that the entire record of this case is presently on appeal. Based on references in the few available pleadings and briefs, Judge Dowd apparently grounded his determination on the fact that Plaintiffs and Aetna entered into a post-pe-

tition agreement concerning the claims referenced in the complaint.

**2.** Au, Inc., at the various times the first three agreements were executed, was insolvent in that

agreement, Au, Inc. assigned its right to certain disputed claims to Aetna and appointed Aetna its attorney-in-fact with regard to those claims. Plaintiffs fully cooperated with Aetna so these disputed claims could be prosecuted.

The last of these agreements was executed August 5, 1983, ten days after the filing of Au, Inc.'s voluntary bankruptcy petition. In return for Plaintiffs' continued cooperation, Aetna agreed to pay Plaintiffs one-half of any recovered proceeds from pending litigation with the Northeast Ohio Regional Sewer District (NEORSD).[3] Aetna ultimately abandoned Au, Inc.'s claims against NEORSD pursuant to the plan of reorganization. Count 1 claims this was a breach of Aetna's promise to prosecute or settle the NEORSD litigation in a manner beneficial to Plaintiffs, and of its implied obligation as attorney-in-fact to exercise its settlement power in good faith. Additionally, Count 1 alleges that Aetna breached contractual and fiduciary duties in refusing to pay Au, Inc. or its counsel so Au, Inc. could pursue the NEORSD litigation on its own.

Count 2 alleges that Aetna received over two million dollars from the disposition of the assigned claims, which it would not have received without Plaintiffs' cooperation in the preparation, prosecution and settlement of the disputed claims. Aetna will be unjustly enriched, Plaintiffs assert, if it is allowed to retain the benefit of Plaintiffs' services without continuing to pursue the NEORSD litigation. Aetna in its counterclaim requests judgment on a promissory note given by Au, avers that Au did not use his best efforts to cooperate with Aetna as required by the various agreements, breached a corresponding duty of good faith and breached a fiduciary duty to Aetna, resulting in various damages.

On August 17, 1990, Au filed a motion to withdraw reference as to these remaining claims, which motion is currently pending before Judge Dowd.

## DISCUSSION

■ The jurisdiction of the bankruptcy court flows from two distinct statutory provisions. 28 U.S.C. § 1334 gives the district courts original, exclusive jurisdiction of cases under Title 11, and original, nonexclusive jurisdiction of all civil proceedings, "arising under Title 11, or arising in or related to cases under Title 11." The district court may refer such cases and proceedings to the bankruptcy judges of that district.[4] A bankruptcy judge has the power to hear and determine all Title 11 cases and all "core" proceedings, which are defined in part in 28 U.S.C. § 157(B)(2)(A)–(O). If a matter does not fall within the parameters of a core proceeding, it may still be heard by the bankruptcy judge as a "non-core" proceeding under 28 U.S.C. § 157(c)(1) if it is related to a case under Title 11. In a non-core proceeding, a bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court, which undertakes a de novo review and enters a final order. Aetna avers this is a core proceeding on several bases, which the court will consider in turn.

■ Initially, Aetna asserts that because the plan of reorganization provided that this court retain jurisdiction over all pending adversary proceedings, this proceeding remains core. While the court may properly retain jurisdiction over post-confirmation matters under 11 U.S.C. § 1142(b) pursuant to a plan provision, it may not expand its jurisdiction merely by asserting it in a reorganization plan. *In re Tri–L Corp.*, 65 B.R. 774 (Bankr.D.Utah 1986); *In re Terracor*, 86 B.R. 671 (D.Utah 1988) (language of plan not controlling to retain jurisdiction beyond scope of Code). Despite the plan language, the court must determine the core/non-core status of the case before it may exercise its powers.

---

it could not pay debts as they came due, although it held substantial non-Liquid assets.

**3.** Plaintiffs aver such claim exceeds five million dollars.

**4.** This District has provided for automatic referral of bankruptcy cases and proceedings through General Order No. 84 entered July 16, 1984.

Aetna cites two Sixth Circuit opinions in support of its expansive interpretation of jurisdiction. *In re Salem Mortgage Co.*, 783 F.2d 626 (6th Cir.1986) addresses the district court's bankruptcy jurisdiction under 28 U.S.C. § 1471(b), the predecessor to 28 U.S.C. § 1334. *Salem* involved a "related" adversary proceeding in which numerous mortgagors sued the debtor-broker on various fraud and consumer lending grounds. The bankruptcy court certified the plaintiffs as a class and entered a consent judgment, which it submitted to the district court. The district court raised the question of subject matter jurisdiction and concluded it did not exist. The Sixth Circuit reversed, holding that the dispute was related in that it impacted on the debtor's liability to investors who purchased the mortgages, and the penalties imposed by the consent order created a subordinate claim against the debtor. While noting that the grant of jurisdiction was "extraordinarily broad," the court also posited that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *Id.* at 634.

In *Salem Mortgage*, the court offered the following commentary on jurisdiction:

Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction only where the action clearly involved property of the estate ... or where determination of a controversy is required for the proper administration or reorganization of the estate. Another test finds jurisdiction whenever the outcome of the proceeding could conceivably have any effect upon the estate being administered in bankruptcy.

*Id.* at 634 (citations omitted).

The proceeding under consideration does not appear to conform to either test. Au's claims against Aetna do not involve property of the estate. A plan of reorganization has been successfully confirmed without inclusion of the Au claims or provision for their resolution. Even if Au should be successful, any damages awarded to him would be assessed against Aetna and would have no conceivable impact on the estate. This is also in contrast to Aetna's other cited case, *In re SPI Communications & Marketing, Inc.*, 114 B.R. 14 (N.D. N.Y.1990) in which both a debtor corporation and its principal brought adversary proceedings against the corporation's former counsel for malpractice in the bankruptcy proceeding. Any recovery by the individuals would flow through to the estate's creditors by virtue of guarantees given by the principal. The *SPI* case would be on point if Au, Inc. were still involved in this proceeding, and indeed mirrors Au's previous argument that this was a core proceeding. Without the presence of Au, Inc., we do not find this proceeding "inextricably connected" to the bankruptcy case. *Id.* at 18. Unless Aetna's other arguments have merit, this case certainly appears to be one with the aforementioned "extremely tenuous" connection to the estate, which is insufficient for jurisdiction purposes.

The second Sixth Circuit case, *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir.1987), offers the proposition that the failure to object to jurisdiction in a timely fashion constitutes an implied consent to such jurisdiction. In that case, defendant Foster purchased investment certificates from Southern Industrial Banking Corp. (SIBC) and, in a separate transaction, pledged those certificates as collateral for a $470,000.00 loan from SIBC. The note and certificates were scheduled to mature on the same date. SIBC filed a Chapter 11 petition 12 days before the maturity date. The Chapter 11 Trustee then brought an adversary proceeding against Foster to recover the note proceeds. Bank of Commerce (BOC) moved to intervene, having been assigned the note under SIBC's reorganization plan. The bankruptcy court held that the transfer was not a preference and BOC could properly recover on the note, denying Foster's right to set off the certificates against the amount owed.

After the dispute was resolved against him, Foster contested the bankruptcy court's jurisdiction on appeal in adjudicat-

ing his dispute with BOC. The district court found that the case was a core proceeding. The Sixth Circuit affirmed on different grounds, holding that the Foster–BOC dispute was a related proceeding, but that all parties had consented to jurisdiction and the proceeding therefore had the same effect as a core proceeding.

■ Aetna makes much of the fact that Au "consented" to jurisdiction by opposing Aetna's motion to withdraw reference and by designating the amended complaint as a core proceeding. But what Aetna ignores is that this proceeding has undergone substantial changes since the time Au took what now appears to be a contrary position.[5] Au, Inc. is no longer involved in this adversary proceeding. This case is readily distinguishable from *SIBC*, in which Foster did not object to jurisdiction until his rights had been fully adjudicated with an adverse result. Au raised this objection prior to any adjudication of his claims and shortly after the settlement which removed Au, Inc. from the proceeding. *SIBC* is also distinguishable on the basis that Foster's claim of setoff was based on bankruptcy law, on a debt owed to him by the bankrupt debtor. Au's claims are based on state law contractual rights and equitable concepts, not bankruptcy law. Au was asserting his independent right to sue Aetna as a separate and distinct party from Au, Inc. under the contracts.

In the amended complaint, Au asserted his right to relief jointly *and severally* against Aetna, arising from the same series of contracts and stating that the claims of Au and Au, Inc. contain common questions of law and fact. In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984), the Third Circuit commented that the presence of common factual issues between a civil proceeding and a controversy involving the bankruptcy estate did not warrant a finding of bankruptcy court jurisdiction over a products liability claim between third par-

ties. In *Pacor*, the third-party defendant joined the bankrupt debtor as defendant through impleader. Although the court stated that the defendant might have an indemnification claim against the debtor, the initial suit between the two unrelated parties could itself have no effect on the bankruptcy. The instant proceeding is even more removed than the situation in *Pacor*, since Au, Inc. and Aetna have already resolved their claims through the plan.[6]

This court has acknowledged and approved a broad interpretation of jurisdiction in other decisions. *See, Matter of GEX Kentucky, Inc.*, 85 B.R. 431 (Bankr. N.D.Ohio 1987) (property ownership dispute between the debtor and third parties was a related proceeding). However, the court cannot stretch that broad concept past the boundaries of reasonableness to encompass a matter which, in its present context, has no nexus with the debtor and cannot affect the debtor's estate or its administration. It is therefore held that this court lacks subject matter jurisdiction over this non-core, unrelated adversary proceeding.

An order in accordance herewith shall enter.

---

5. For the same reason, we do not regard Judge Dowd's determination that this is a core proceeding to be controlling, as he reviewed the matter in a different factual and procedural context.

6. In distinguishing *Pacor,* the Sixth Circuit in *Salem Mortgage* noted that the parties before it were more "intertwined" than those in *Pacor.* 783 F.2d at 635.