FILED

SEP 23 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   MT-13-1097-TaPaJu |
| JOHN PATRICK STOKES, | Bk. No.   09-60265-RBK |
| Debtor. | Adv. No.  12-00052-RBK |
| JOHN PATRICK STOKES, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| GREGORY W. DUNCAN;<br>KATHLEEN M. GLOVER, | |
| Appellees. | |

Argued and Submitted on July 25, 2013
at Butte, Montana

Filed – September 23, 2013

Appeal from the United States Bankruptcy Court
for the District of Montana

Honorable Ralph B. Kirscher, Bankruptcy Judge, Presiding

Appearances:    Edward Albert Murphy of Murphy Law Offices, PLLC
                argued for appellant John Patrick Stokes; Denny
                Kevin Palmer of McMahon, Wall & Hubley, PLLC
                argued for appellees Gregory W. Duncan and
                Kathleen M. Glover.

Before:   TAYLOR, PAPPAS, and JURY, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

**INTRODUCTION**

The bankruptcy court denied debtor and defendant John Patrick Stokes' motion seeking to dismiss an adversary proceeding for lack of subject matter jurisdiction and granted summary judgment on the merits in favor of plaintiffs Gregory W. Duncan ("Duncan") and Kathleen M. Glover ("Glover") (collectively, "Appellees"). The Debtor appeals from both the related order and judgment. For the reasons discussed below, we vacate the bankruptcy court's order and judgment and remand with instructions to dismiss the adversary proceeding.

**FACTS**

In February 2009, the Debtor retained Duncan as bankruptcy counsel; Duncan filed a chapter 11[1] petition on behalf of Debtor the following month. Duncan neither requested nor received authorization to represent the Debtor in the chapter 11 case. Notwithstanding, the attorney-client relationship between Debtor and Duncan continued, but apparently not smoothly. Duncan, thus, moved to withdraw as counsel shortly after the petition date; the bankruptcy court granted his request in June of 2009. Duncan never requested approval of compensation from the bankruptcy court, and there is no evidence that he received payment from estate assets.

The Debtor's bankruptcy case also floundered; eventually the bankruptcy court granted the United States Trustee's motion and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 ("Code"). "Rule" references are to the Federal Rules of Bankruptcy Procedure.

converted the Debtor's bankruptcy case to one under chapter 7. Richard J. Samson was appointed as the chapter 7 trustee ("Trustee"). The Trustee actively administered the case over the next two years.

On February 28, 2012, while the chapter 7 case was still pending, the Debtor commenced an action against Duncan and Glover, Duncan's paralegal, in Montana state court (the "State Court Action"). The State Court Action involved claims for legal malpractice, breach of contract, and breach of fiduciary duty (collectively, "Malpractice Claims"). After he became aware of this litigation, the Trustee claimed the Malpractice Claims as assets of the Debtor's estate and obtained a stay of the State Court Action.

The Trustee attempted to recover on the Malpractice Claims for the benefit of the estate. Thus, he agreed to sell the estate's interest in the Malpractice Claims, if any, to the Debtor. This would free Debtor to control the State Court Action and would end the dispute between the estate and Debtor over ownership of the claims. After Trustee filed a notice of intent to sell, however, Duncan and Glover submitted a counter-offer; obviously, they hoped to gain a controlling interest in the Malpractice Claims and, thereby, to terminate the State Court Action. In response, the Trustee withdrew the notice of intent to sell and, instead, moved for an order establishing bidding procedures in anticipation of an auction; the bankruptcy court granted this motion.

The bankruptcy court subsequently approved the sale of the Malpractice Claims by auction ("Sale Order"). The Sale Order

3

described the assets to be sold as "the estate's interest, if any, in the Malpractice Claims." It also contained language protecting the estate from post-sale claims; in particular, it provided that the sale was "as is, where is" and that "the Trustee [made] no representations or warranties regarding the validity or sufficiency of the claims and/or **whether the claims are property of this bankruptcy estate.**" (Dkt# 419) (emphasis added). The protective language protected the estate from a not-so-hypothetical litigation risk as the Debtor asserted that the Malpractice Claims accrued entirely post-petition and that the estate had no interest in them. No one challenged the Sale Order, and it is now final.

At the auction, Duncan submitted the winning bid. After the sale was finalized, Duncan and Glover commenced an adversary proceeding seeking a declaratory judgment that the Malpractice Claims were property of the estate at the time of Duncan's purchase ("Declaratory Relief Action"). Duncan and Glover clearly intended the Declaratory Relief Action to remove any doubt regarding the extent of their interest in the Malpractice Claims and to act as a bar to any resumption of the State Court Action. Duncan and Glover promptly filed a summary judgment motion ("MSJ").

The Debtor opposed the MSJ, but also moved to dismiss the Declaratory Relief Action based on lack of subject matter jurisdiction ("Dismissal Motion"). In the Dismissal Motion, he argued that the bankruptcy court no longer had jurisdiction as a result of the sale of the estate's interest, if any, in the

Malpractice Claims.[2] He bolstered this argument by noting that the sale was made expressly without warranty of title.

On February 9, 2013, the bankruptcy court entered: (1) an order granting the MSJ and denying the Dismissal Motion; (2) an accompanying memorandum decision; and (3) a declaratory judgment providing that the Malpractice Claims were property of the estate and that the Trustee sold them to Duncan pursuant to the Sale Order.

The Debtor timely appealed from this order and judgment.

**JURISDICTION**

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158. We discuss the bankruptcy court's jurisdiction below.

**ISSUE**

Did the bankruptcy court lack subject matter jurisdiction and, therefore, err when it adjudicated ownership issues related to assets previously sold by the Trustee without warranty of title?

**STANDARD OF REVIEW**

The existence of subject matter jurisdiction is a question of law reviewed de novo. See Atwood v. Fort Peck Tribal Ct. Assiniboine, 513 F.3d 943, 946 (9th Cir. 2008). Findings of fact relevant to the bankruptcy court's determination of subject matter jurisdiction are reviewed for clear error. See Coyle v. P.T. Garuda Indonesia, 363 F.3d 979, 984 n.7 (9th Cir. 2004). A

---

[2] We exercise our discretion to take judicial notice of documents filed in the underlying bankruptcy case and adversary proceeding. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

factual finding is clearly erroneous if illogical, implausible, or without support in the record. See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**DISCUSSION**

The jurisdiction of bankruptcy courts is grounded in, and limited by, statute. Kirton v. Valley Health Sys. (In re Valley Health Sys.), 471 B.R. 555, 563 (9th Cir. BAP 2012) (citation omitted). One relevant statute limits bankruptcy jurisdiction to civil proceedings "arising under" the Bankruptcy Code and "arising in" or "related to" a bankruptcy case. See 28 U.S.C. § 1334(b); see also 28 U.S.C. § 157(b)(1), (2) (describing "core" bankruptcy proceedings in relation to "arising under" and "arising in" jurisdiction).[3] Significantly, this statutory grant of jurisdiction is not exclusive in many respects. See 28 U.S.C. § 1334(b). The bankruptcy court also has exclusive jurisdiction over all assets of the debtor and property of the estate. 28 U.S.C. § 1334(e)(1).

Here we analyze statutory jurisdiction to consider the Declaratory Relief Action against the background of the Sale Order and the subsequent sale of the Malpractice Claims.

///

///

---

[3] Jurisdiction is initially conferred on the district courts. 28 U.S.C. § 1334. The district courts, in turn, may refer bankruptcy cases and proceedings to the bankruptcy courts. 28 U.S.C. § 157(a). Although the language in § 157(a) is permissive, "each district court has provided by rule for automatic reference to bankruptcy judges." 1 Collier on Bankruptcy ¶ 3.02[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2013).

6

**A. The Sale Of The Malpractice Claims Terminated Jurisdiction Under 28 U.S.C. § 1334(e)(1).**

The bankruptcy court has jurisdiction over all property of a debtor as of the commencement of a bankruptcy case and all property of the estate. 28 U.S.C. § 1334(e)(1); see also H.K. & Shanghai Banking Corp., Ltd. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998) (commencement of a bankruptcy case gives the court "exclusive in rem jurisdiction over all of the property in the estate" pursuant to 28 U.S.C. § 1334(e)); cf. Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 369 (2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction.") (emphasis in original). This aspect of bankruptcy jurisdiction is a continuation of the in rem bankruptcy jurisdiction that existed under the Bankruptcy Act of 1898 ("Act"), ch. 541, 30 Stat. 544 (1898).

It is axiomatic that in rem jurisdiction over an asset terminates once the bankruptcy estate relinquishes all rights and interests in the asset. See In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); Elscint, Inc. v. First Wis. Fin. Corp. (Matter of Xonics, Inc.), 813 F.2d 127, 131 (7th Cir. 1987) (once property of the estate is sold, the bankruptcy court must obtain a new source of federal jurisdiction); see also Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990) ("A bankruptcy court has jurisdiction over disputes regarding alleged property of the

7

bankruptcy estate at the outset of the case. When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end.") (citation omitted).

Consequently, as was true under the Act, a bankruptcy court ordinarily lacks jurisdiction to adjudicate ownership disputes involving former property of the estate. See McQuaid v. Owners of NW 20 Real Estate (Matter of Fed. Shopping Way, Inc.), 717 F.2d 1264, 1272 (9th Cir. 1983) (decided under the Bankruptcy Act)[4] ("[W]here property is outside the possession of the bankruptcy court and is held adversely to the trustee, the court, absent consent, has no jurisdiction to adjudicate conflicting claims of title to the property, even where one of the claims is asserted by the trustee himself."); see also Rodeo Canon Dev. Corp. v. Goodrich (In re Rodeo Canon Dev. Corp.), 392 F. App'x 576, 579 (9th Cir. 2010) (citing Matter of Fed. Shopping Way, Inc. and determining that the bankruptcy court lacked jurisdiction to adjudicate ownership of property when the subject property was sold, and, thus, was no longer property of the estate); see also In re Gardner, 913 F.2d at 1519 (also citing Matter of Fed. Shopping Way, Inc. in support of its determination that a bankruptcy court lacks jurisdiction to resolve disputes

---

[4] Unless Congress expressly manifests its intent to change well-established judicial interpretation of the bankruptcy laws as they existed prior to enactment of the Bankruptcy Code in 1978, we must presume that pre-Code interpretations of the Act have survived the enactment. See generally United States v. Ron Pair Enter., Inc., 489 U.S. 235, 244–45 (1989); Rodriguez v. United States, 480 U.S. 522, 525 (1987) (per curiam).

8

between third-parties as to non-estate property).

Federal Shopping Way involved most directly a bankruptcy court's injunction barring state court action under facts very similar to those in this case. There, the trustee sold property, but the deed and order did not convey more than whatever the trustee had and did not decide title questions. 717 F.2d at 1270. The Ninth Circuit, thus, determined that an injunction was not necessary to enforce an order that the bankruptcy court did not make. Id. And it further held that once the property left the actual or constructive possession of the bankruptcy court, the bankruptcy court lacked jurisdiction to adjudicate conflicting claims of ownership. Id. at 1272.

Here, the Declaratory Relief Action squarely and singularly sought a determination of pre-sale ownership and property rights in the Malpractice Claims. Under the rule articulated in Federal Shopping Way (and reaffirmed in Rodeo Canon), however, the bankruptcy court lacked jurisdiction under 28 U.S.C. § 1334(e) to adjudicate disputes as to ownership and property rights in the Malpractice Claims once the asset was sold and transferred from the estate. The bankruptcy court's in rem jurisdiction over the Malpractice Claims lapsed after the sale. Thus, because the estate no longer had any interest in these claims, 28 U.S.C. § 1334(e)(1) could not be a source of jurisdiction.

**B. The Bankruptcy Court Did Not Have Jurisdiction Under 28 U.S.C. § 1334(b) To Decide The Declaratory Relief Action.**

Having concluded that jurisdiction under 28 U.S.C. § 1334(e) terminated upon sale of the Malpractice Claims, the Panel must determine whether jurisdiction otherwise exists for bankruptcy

9

court consideration of the Declaratory Relief Action. Here, the sale of the Malpractice Claims significantly altered the jurisdictional analysis. Ultimately, bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets and extends no further than its purpose. In re Xonics, Inc., 813 F.2d at 131. This general description of jurisdiction suggests there was no basis for bankruptcy jurisdiction to decide the Declaratory Relief Action; judicial resolution of the Declaratory Relief Action no longer had any direct relationship to the estate.

The only issue before the bankruptcy court in the Declaratory Relief Action was the dispute as to ownership and property rights in the Malpractice Claims at the time of the sale. A resolution of this dispute necessarily involved exclusively a consideration of state law. See Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The parties do not argue that a federal interest compels a different result here, and we do not independently discern one.

The Sale Order explicitly made clear that as a result of the sale, a buyer had no further recourse against the estate. The Sale Order sold the estate's interest, if any, in the Malpractice Claims on an "as-is where-is" basis and expressly disclaimed any warranty of title. Thus, the estate not only transferred its rights, if any, in the Malpractice Claims, but it also insulated

10

itself from the consequences of a subsequent determination that all it sold was a valueless claim.

The Sale Order left open the issue of ownership, but nothing in the record states or even suggests that the bankruptcy court would make this determination. The bankruptcy court did not expressly retain jurisdiction. Against this background, we evaluate jurisdiction under 28 U.S.C. § 1334(b).

**1. Asset Resolution Issues Generally Are Not Core Unless They Affect Estate Administration or Involve Liquidation of the Estate's Assets or Adjustment of the Debtor-Creditor Relationship.**

The Appellees correctly note that issues involving estate assets are central to the bankruptcy process and that proceedings determining the extent of estate assets are typically core proceedings where bankruptcy court jurisdiction clearly exists. On this platform they claim, jurisdiction firmly stands. An examination of the statute defining core jurisdiction, however, makes clear that, under the facts of this case, this matter was far from clearly core.

The statutory law defining core matters does not include a specific reference to estate asset ownership disputes. See 28 U.S.C. § 157(b). Instead, jurisdiction in relation to estate assets typically arises under 28 U.S.C. § 1337(e) and the bankruptcy court's in rem jurisdiction in assets, while jurisdiction over a particular dispute arises under the catch-all provisions of 28 U.S.C. § 157 to the extent the dispute affects estate administration or involves liquidation of these assets or adjustment of the debtor-creditor relationship. See 28 U.S.C.

11

§ 157(b)(2)(A) & (O). Thus, the stated categories of core matters encompassed the Declaratory Relief Action only to the extent it involved current liquidation of assets, a current adjustment of debtor-creditor relationship, or current administration of the bankruptcy estate.

Here, the Declaratory Relief Action achieved none of these goals. As a result of the language in the Sale Order, the Declaratory Relief Action was completely estate neutral. It did not result in a transfer of an estate asset; it did not create a claim against the estate; it did not relieve the estate from a claim; and, thus, it in no way impacted administration of the estate. Neither the Trustee nor estate creditors had a stake in the action.

The fact that the Debtor was involved is irrelevant as the Debtor's recovery or expenses, again, would not impact the estate. If the Debtor prevailed, the estate would not be enhanced. If he was unsuccessful, the estate was not lessened. The Declaratory Relief Action was far from clearly core. Section 157(b), however, does not include a comprehensive list of core matters; a matter may still be core if jurisdiction "arises under" the Code or "arises in" the bankruptcy case. Thus, we look more closely at these possible bases for jurisdiction.

**2.    The Bankruptcy Court Did Not Have "Arising Under" Jurisdiction Over the Declaratory Relief Action.**

Neither party argues that the Declaratory Relief Action was a proceeding "arising under" the Code. Nonetheless, on de novo review, we conclude that it was not.

A civil proceeding "arises under" the Code if it "depends on

12

a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." Battleground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1130 (9th Cir. 2010); see also In re Valley Health Sys., 471 B.R. at 563 ("A proceeding to enforce a right to relief created by [the Code] "arises under" [the Code].").

Here, the only arguably applicable Code provision is § 541; the Declaratory Relief Action contained a single ground for relief: a determination as to whether the assets sold to Duncan were property of the estate under § 541. While this request seemingly implicates and, indeed, requires application of § 541, on closer inquiry, there exists a subtle yet important distinction. Section 541 defines property of the estate, but does not create a right to relief. It, therefore, follows that an action to enforce a right thereunder cannot exist. See, e.g., Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), --- F.3d ---, 2013 WL 4797288, at *5 (9th Cir. Sept. 10, 2013) (fact that bankruptcy statute was implicated did not transform statute into substantive right to relief for the purposes of bankruptcy jurisdiction).

Appellees seek a determination as to ownership of the Malpractice Claims, and in their petition for declaratory relief, state that: "[a]n actual controversy has arisen and now exists relating to the rights and duties of the parties to this action." (Emphasis added). The Malpractice Claims are claims arising under Montana law and whether they were assets of the bankruptcy estate is a function of timing that is also determined under

13

Montana law.  See Butner, 440 U.S. at 55.  Under these particular facts, then, whether the assets sold were property of the estate under § 541 was a secondary (and perfunctory) issue in contrast to the actual and substantive issue: ownership of and rights in the Malpractice Claims for the purposes of the State Court Action.  See generally In re Wilshire Courtyard, 2013 WL 4797288, at *4 (merits question that does not rest on substantive portion of the Code does not "arise under" the Code).  Here, the Declaratory Relief Action could not "arise under" the Code.

**3.    The Bankruptcy Court Did Not Have "Arising In" Jurisdiction Over the Declaratory Relief Action.**

Proceedings "arising in" a bankruptcy case are those that would not exist outside the case, such as matters involving the administration of the bankruptcy estate.  In re Ray, 624 F.3d at 1130.  Moreover, "that a matter would not have arisen had there not been a bankruptcy case does not *ipso facto* mean that the proceeding qualifies as an 'arising in' proceeding." In re Wilshire Courtyard, 2013 WL 4797288, at *5 (citation omitted).

Such jurisdiction does not support consideration of the Declaratory Relief Action.  Here, because of the protective language in the Sale Order, the dispute did not involve estate administration or the actions of the Trustee in any respect.  As a result of the protective language in the Sale Order, the estate was insulated from any administrative impact.

Appellees cite multiple cases for the proposition that jurisdiction existed because the Malpractice Claims "arose in" the Debtor's bankruptcy case.  See, e.g., Grausz v. Englander,

14

321 F.3d 467 (4th Cir. 2003); <u>Matter of Wheeler</u>, 137 F.3d 299 (5th Cir. 1998); <u>Kaiser Group Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Group Int'l, Inc.)</u>, 421 B.R. 1 (Bankr. D.D.C. 2009); <u>Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)</u>, 205 B.R. 834 (Bankr. W.D. Tex. 1997); <u>In re SPI Commc'ns & Mktg., Inc.</u>, 114 B.R. 14 (Bankr. N.D.N.Y. 1990); <u>Smith-Canfield v. Spencer (In re Smith-Canfield)</u>, 2011 WL 1883833 (Bankr. D. Or. May 17, 2011). These cases are distinguishable first because the Malpractice Claims were filed in state court and remained there; the merits of these claims were not before the bankruptcy court. Also, none of these cases involved a situation where the estate's interest was sold prior to initiation of the action at issue.

More importantly, however, reliance on the Malpractice Claims for "arising in" jurisdiction misses the point; jurisdiction over the Declaratory Relief Action is the issue here. Whether the bankruptcy court has or had jurisdiction to decide the Malpractice Claims themselves is irrelevant. The Declaratory Relief Action sought only an ownership determination in the State Court Action. Clearly, it was not a determination that was limited to a bankruptcy forum; instead it involved state law issues that could be determined by a state court. Here, the issue is temporal - jurisdiction may have existed - but as a result of the Sale Order, it terminated.

**4.    The Declaratory Relief Action Was Not Otherwise a Core Proceeding.**

Core proceedings are matters that "arise under" the Code or "arise in" a bankruptcy case. <u>Stern v. Marshall</u>, 131 S. Ct.

15

2594, 2605 (2011). Whether a proceeding is core or non-core does not denote or confer a separate basis of bankruptcy jurisdiction; rather, a core proceeding refers to matters that the bankruptcy court may hear and determine, as opposed to non-core matters, where, absent consent, the bankruptcy court may hear but not finally adjudicate. See 28 U.S.C. § 157(c)(1). Accordingly, when a proceeding is "core," it necessarily indicates that the proceeding "arises under" the Code or "arises in" the bankruptcy case. See Stern, 131 S. Ct. at 2605.

As previously discussed, the Declaratory Relief Action did not implicate either "arising under" or "arising in" jurisdiction. Therefore, it follows that the Declaratory Relief Action cannot constitute a core proceeding. Also as previously discussed, a facial review of 28 U.S.C. § 157 does not suggest a different result.

Prior to consummation of the sale, the dispute as to ownership of the assets could have been core as a matter concerning administration of the estate or as a matter affecting liquidation of estate assets or adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(A) & (O). Indeed, "[p]roceedings to determine the nature and extent of property of the estate are fundamental to the administration of a bankruptcy case," and, thus, are "core" proceedings. See Watson v. Kincaid (In re Kincaid), 96 B.R. 1014, 1017 (9th Cir. BAP 1989), rev'd on other grounds, 917 F.2d 1162 (9th Cir. 1990). After the sale, however, there was no estate need or bankruptcy related basis for any determination in relation to ownership of the Malpractice Claims. Nor was there a bankruptcy or estate-related need for

16

adjudication of issues related to liquidation of an estate asset or adjustment of the debtor-creditor relationship. Once again, post sale the estate had no interest in the dispute.

**5.  The Bankruptcy Court Did Not Have "Related To" Jurisdiction Over the Declaratory Relief Action.**

"Related to" jurisdiction exists when "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (adopting the test in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

Here, the Sale Order sold all of the estate's interest in the Malpractice Claims and expressly provided that the sale was made without warranty of title. Once again, the express disclaimer insured that the estate was insulated from the outcome of any subsequent dispute with respect to the assets sold. Thus, it mattered not, from the estate's perspective, what the Trustee sold to Duncan. The outcome of the Declaratory Relief Action could not impact the bankruptcy estate, could not impact creditor recoveries, and could not impact or involve the Trustee. Thus, the bankruptcy court did not have "related to" jurisdiction. See Matter of Xonics, Inc., 813 F.2d at 131 ("[I]t is the relation of dispute to [the] estate, and not of party to [the] estate, that establishes jurisdiction.").

**C.  Ancillary Jurisdiction Does Not Exist In Relation To The Declaratory Relief Action.**

Finally, Appellees assert that the bankruptcy court possessed inherent or ancillary jurisdiction to interpret and

17

enforce the Sale Order, independent of 28 U.S.C. § 1334 jurisdiction. A bankruptcy court, indeed, has "jurisdiction to interpret and enforce its own prior orders." See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009); see also In re Ray, 624 F.3d at 1130 (bankruptcy court has ancillary jurisdiction to vindicate its authority and effectuate its decrees).

Here, however, the bankruptcy court authorized the sale with "no representations or warranties regarding the validity or sufficiency of the claims and/or whether the claims are property of this bankruptcy estate." This was not a situation where the parties disputed the estate's interest in the assets sold before the sale. In fact, had they disputed the estate's interest before the sale, the bankruptcy court would have been required to adjudicate the dispute. See Darby v. Zimmerman (In re Popp), 323 B.R. 260, 268-70 (9th Cir. BAP 2005). Nor was this a case where the bankruptcy court authorized the sale of specific rights or adjudicated issues where its determinations were attacked subsequently.

Moreover, because of the express disclaimer in the Sale Order, it was unnecessary for the bankruptcy court to determine ownership of the claims as a means of preserving a benefit that the parties bargained for prior to the sale. See In re Wilshire Courtyard, 2013 WL 4797288, at *8-9 ("[A]ncillary jurisdiction exists where necessary to preserve a benefit the parties initially bargained for."). Under these circumstances, the Declaratory Relief Action was not a request for the bankruptcy court to enforce, clarify, interpret, or otherwise vindicate the

18

Sale Order.

Certainly, a bankruptcy court would have jurisdiction where it purported to sell an asset and judicial action was necessary to bar subsequent activity inconsistent with the sale order. But here, the Declaratory Relief Action itself is inconsistent with the Sale Order. The Sale Order, in effect, washed the estate's hands of any responsibility for decisions involving the Malpractice Claims, including subsequent determinations of ownership. In this sense, it is Appellees who collaterally attack the Sale Order by requesting findings of ownership, despite a final order's express disclaimers of warranty. Questioning the bankruptcy court's jurisdiction over the Declaratory Relief Action, thus, is far from an attack on a prior bankruptcy court order.

Thus, based on the foregoing discussion, we conclude that the bankruptcy court lacked subject matter jurisdiction to resolve the Declaratory Relief Action. It, thus, erred when it granted the MSJ and denied the Dismissal Motion.[5]

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's order and judgment and REMAND to the bankruptcy court with instructions to dismiss the adversary proceeding for lack of jurisdiction.

---

[5] As a result, we need not and do not consider the parties' remaining arguments on appeal.

19