**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. NV-14-1255-JuKuD |
| | ) | BAP No. NV-14-1280-JuKuD |
| BRENDA B. TODD, | ) | (Cross-Appeals) |
| | ) | |
| Debtor. | ) | Bk. No. 09-14362 |
| _____ | ) | |
| BRENDA B. TODD, | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M* |
| | ) | |
| LOWELL E. ROTHSCHILD, Chapter | ) | |
| 11 Trustee for Fort Defiance | ) | |
| Housing Corp., Inc., | ) | |
| | ) | |
| Appellee/Cross-Appellant, | ) | |
| | ) | |
| VICTORIA L. NELSON, Chapter 7 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on March 19, 2015
at Las Vegas, Nevada

Filed - April 7, 2015

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Linda B. Riegle, Bankruptcy Judge, Presiding
_____

Appearances:     Brenda Todd argued pro se; Frederick J. Peterson
of Mesch, Clark & Rothschild, P.C. argued for
Lowell E. Rothschild, Chapter 11 Trustee for Fort

_____

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

_____

Before: JURY, KURTZ, and DUNN, Bankruptcy Judges.

Chapter 7[1] debtor, Brenda Todd (Debtor), was in a car accident and suffered significant injuries. Debtor filed a state court action against the driver and his employer seeking general and special damages, punitive damages, and attorneys' fees and costs. The litigation ended in the settlement and release of Debtor's claims for $2.5 million (Personal Injury Settlement). The settlement agreement did not allocate the lump-sum amount to any damage theory.

Subsequently, in the chapter 11 bankruptcy case of Fort Defiance Housing Corporation (FDHC), the Arizona bankruptcy court entered a judgment for $18,500,883.59 in favor of the chapter 11 trustee, Brenda Moody Whinery (Whinery), and against Debtor, Lodgebuilder Inc. (Lodgebuilder), and others, jointly and severally (Arizona Judgment). The court also issued a permanent injunction, enjoining Debtor from, among other things, accessing her Solomon Smith Barney account (SSB Account), which contained monies from her Personal Injury Settlement. In February 2013, appellee and cross appellant, Lowell E.

_____

[**] Appellee Victoria L. Nelson is the successor chapter 7 trustee to James Lisowski. Nelson has not filed a brief or otherwise participated in this appeal.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

Rothschild, was appointed the successor trustee (Creditor Trustee) in the FDHC case.

Soon after the Arizona Judgment was entered against her, Debtor filed a chapter 11 petition in the Nevada bankruptcy court, which was later converted to chapter 7. Months after her filing, in an amended and corrected Schedule C attached to a pleading, Debtor claimed as exempt more than $1 million from the Personal Injury Settlement proceeds as compensation for loss of future earnings under Nev. R. Stat. (N.R.S.) § 21.090(1)(w). Debtor did not file or docket the amended Schedule C, but e-mailed it to the chapter 7 case trustee and Creditor Trustee's attorney.

Meanwhile, Creditor Trustee and the chapter 7 trustee entered into a settlement agreement to avoid litigation over the ownership of Debtor's assets, which were subject to the Arizona Judgment and injunction (Rule 9019 Settlement). The parties agreed, among other things, that the SSB Account belonged to FDHC's estate. Debtor objected to the settlement by asserting her exemption rights in various assets, including the Personal Injury Settlement proceeds that were deposited into the SSB Account. The bankruptcy court overruled Debtor's objection and entered an order approving the settlement (Rule 9019 Settlement Order). Debtor attempted to appeal the order by filing a notice of appeal (NOA) in Lodgebuilder's bankruptcy case and not her own. She also did not seek a stay pending appeal. The Nevada district court dismissed the appeal based on Debtor's lack of standing.

Creditor Trustee then filed a motion for summary judgment

-3-

(MSJ) on the issue of whether Debtor was entitled to an exemption on any portion of the Personal Injury Settlement proceeds for loss of future earnings. The bankruptcy court granted Creditor Trustee's MSJ. Debtor filed an appeal to the district court. Since there was no stay pending appeal, Creditor Trustee withdrew monies from the SSB Account and made distributions pursuant to the terms of the Rule 9019 Settlement and the confirmed FDHC chapter 11 plan. Meanwhile, the district court reversed the bankruptcy court's order granting Creditor Trustee's MSJ, finding there was a genuine issue of material fact as to whether Debtor was entitled to exempt any portion of the Personal Injury Settlement proceeds as loss of future earnings.

Subsequently, the bankruptcy court conducted a trial on the proper allocation of the loss of future earnings damages in the Personal Injury Settlement award to determine the amount of Debtor's exemption. The court entered its findings of fact and conclusions of law (FFCL) and a judgment, finding Debtor was entitled to exempt $461,608.02 for loss of future earnings. Creditor Trustee filed a motion for additional findings, reconsideration, or to alter or amend the judgment (Motion to Alter or Amend), which the bankruptcy court denied.

Debtor appealed from the judgment and Creditor Trustee filed a cross appeal. Both parties assign error to the bankruptcy court's decision on the amount of the exemption. Debtor claims that the exemption for loss of future earnings should be $1,081,540.00. Creditor Trustee contends the amount should be no more than $108,008.13 or, alternatively, that the

-4-

exemption should be disallowed in its entirety based on the doctrines of res judicata and judicial estoppel.

We conclude that Debtor's exemption rights in the SSB Account are determined by the Rule 9019 Settlement Order and the Bankruptcy Code. The plain language in the Rule 9019 Settlement Order stated that the FDHC estate owned the funds in the SSB Account, the account was transferred to Creditor Trustee, and there was no carve-out for Debtor's exemption. As a result, the bankruptcy court no longer had jurisdiction over the SSB Account since it was neither property of Debtor's estate nor property of the Debtor. See 28 U.S.C. § 1334(e)(1). Further, under § 522(b), the debtor may exempt certain property "from property of the estate." "[O]bviously, then, an interest that is not possessed by the estate cannot be exempted." See Owen v. Owen, 500 U.S. 305, 308 (1991). Accordingly, the issue of Debtor's exemption in the funds in the SSB Account became moot once the funds were no longer property of Debtor's estate or the Debtor. For these reasons, we VACATE the judgment and DISMISS this appeal.

## I.  FACTS

The facts are mostly taken from the parties' Joint Pre-Trial Statement in which they stipulated to certain facts and the bankruptcy court's FFCL entered on May 6, 2014.

### A.  Prepetition Events

#### 1.  Debtor's Employment

Debtor was employed by Lodgebuilder, a building contractor which did business with FDHC and other entities. FDHC is a nonprofit Navajo corporation, incorporated for the sole purpose

-5-

of building and leasing low income housing on the Navajo reservation. FDHC operations were funded by federal grants and federally supported loans. Debtor owned a 20% stake in Lodgebuilder, and William Aubrey (Aubrey) owned 80%. Debtor received a $10,000 monthly salary from Lodgebuilder prior to and after her car accident.

In addition to her interest in Lodgebuilder, Debtor owned and managed a restaurant called Blondie's in Glacier, Montana. Blondie's had a gaming license and provided customers with slot machines, food and drinks.

## 2. The Car Accident

On May 25, 2003, Debtor was injured in a serious car accident. She filed a state court action against Aaron Wade Melancon and Casablanca Resorts, LLC, alleging causes of action for negligence, negligence per se, respondeat superior, and negligent hiring and supervision. Debtor sought general damages, special damages, property damages, punitive damages, and attorneys' fees and costs.

After some time, the parties settled the matter. In exchange for a lump-sum cash payment of $2.5 million, Debtor released all claims, demands, and causes of action and damages of any kind arising out of the incident. The settlement agreement did not allocate the lump-sum amount to any specific damage claim. After paying her attorney $634,339.42, Debtor received $1,865,660.58 (Settlement Proceeds) and deposited that amount into her checking account at Mountain America Credit Union (MACU).

In May 2006, Debtor transferred $1.5 million of the

-6-

Settlement Proceeds from her MACU account to her pre-existing SSB Account which had a balance of $535,640.86. Debtor purchased six mutual funds with the $1.5 million and some additional cash. On May 31, 2005, the account balance was $2,037,991.86, consisting of stocks and cash.

After the car accident, Lodgebuilder paid Debtor's medical expenses and continued to pay her salary. Debtor used $130,000 of the Settlement Proceeds, plus money from other accounts and payments from Allstate insurance, to repay Lodgebuilder for the medical expenses.

### 3. The FDHC Bankruptcy Case

In 2005, FDHC filed a chapter 11 petition in the Arizona bankruptcy court. Whinery was appointed the chapter 11 trustee. In October 2006, Whinery filed an adversary complaint against Lodgebuilder, Debtor, Aubrey, and Everett Ross, alleging breach of contract, conversion, misrepresentation, negligence, breach of fiduciary duty, civil conspiracy/aiding and abetting, fraudulent conveyance, and unjust enrichment, and seeking general and punitive damages. At the same time, she requested a temporary restraining order and preliminary injunction freezing the defendants' assets and bank accounts.

In March 2009, the Arizona bankruptcy court entered a judgment in favor of Whinery and against Lodgebuilder, Aubrey, and Debtor, in the amount of $18,500,883.59.[2] The court also enjoined the transfer of assets that were traceable proceeds of

_____

[2] The Arizona bankruptcy court found that Debtor and Aubrey converted over $16 million of FDHC's money by transferring it to various Las Vegas casinos.

FDHC's assets and which were in the name of Debtor and the others, including funds in Debtor's SSB Account. Although the Arizona bankruptcy court froze Debtor's SSB Account, the court allowed her to withdraw $206,158.00 from the account for legal fees and living expenses. Debtor withdrew this amount from the cash portion of the monies contained in the account.

In February 2013, Rothschild became the successor trustee in the FDHC case.

**B. Bankruptcy Events**

Shortly after the Arizona Judgment was entered against her, Debtor filed a chapter 11 petition in the Nevada bankruptcy court.[3]

Prior to her filing, the balance in the SSB Account decreased due to withdrawals authorized by the Arizona bankruptcy court and stock market losses in 2008. On March 26, 2009 — the date she filed her petition — the SSB Account had a balance of $1,340,719.00. After Debtor filed her bankruptcy petition, the funds in the SSB Account remained largely untouched, with the exception of withdrawals authorized by the Arizona bankruptcy court.

On April 10, 2009, Debtor filed her schedules and statement of financial affairs. In Schedule B, under "Description and Location of Property," Debtor listed "Smith Barney" with a value of $1,340,719.00. In Schedule C, Debtor did not list an exemption for loss of future earnings under N.R.S.

---

[3] Aubrey and Lodgebuilder also filed bankruptcy petitions. Those cases were jointly administered with Debtor's case.

§ 21.090(1)(w).

On April 30, 2009, Debtor filed amended Schedules B and C, listing her property claimed as exempt. Again, in Schedule B under "Description and Location of Property," Debtor put "Smith Barney" with a value of $1,340,719.00, but she did not list an exemption for loss of future earnings in her amended Schedule C.

In early September 2009, the bankruptcy court converted Debtor's chapter 11 case to chapter 7. James Lisowski was appointed the chapter 7 trustee.

On November 25, 2009, Creditor Trustee filed an objection to Debtor's claimed exemptions, none of which were based on the loss of future earnings under N.R.S. § 21.090(1)(w). On December 31, 2009, Creditor Trustee filed an amended objection.

On January 5, 2010, Debtor filed a response to Creditor Trustee's amended objection. Attached to the response as "Exhibit 1" was a "Corrected & Amended" Schedule C which, for the first time, claimed an exemption under N.R.S. § 21.090(1)(w) in the amount of $1,122,384.00 and another exemption for compensation for personal injury - pain and suffering - in the amount of $377,616.00. The certificate of service showed that Debtor e-mailed her response to Creditor Trustee's attorney, Fred Petersen, and to the chapter 7 case trustee. Debtor did not separately file and docket the "Corrected & Amended" Schedule C attached as "Exhibit 1" to her response.

In July 2011, Creditor Trustee filed a motion to approve a settlement agreement between himself and the chapter 7 trustee the purpose of which was to avoid litigation relating to the ownership of Debtor's assets. Paragraph 2.5 entitled

-9-

"Accounts" provided:

> Lisowski acknowledges and agrees that all funds held in the following accounts: (1) Solomon Smith Barney Account #5240043413532 . . . , all in the name of Todd, which accounts are subject to the Injunction, **are properly owned by, and the assets of, FDHC and subject to the provisions of the FDHC Plan.** Lisowski agrees that such funds will be turned over to Whinery on the Effective Date and that he will cooperate in such turnover, including executing any documents necessary to effectuate such turnover.

(Emphasis added).

Debtor objected to the settlement, arguing that it ignored her exemption rights in various assets, including, but not limited to, her homestead, her car, and for loss for future earnings. Debtor argued that any settlement agreement liquidating her estate should first include and identify her exemptions permitted by law.

Relying on the properly filed Schedule C, Creditor Trustee responded by pointing out that the bankruptcy court could determine the limited issue of whether Debtor's homestead assertion trumped Creditor Trustee's consensual lien on Debtor's residence and that Debtor had never claimed an exemption for her car, which was also subject to a consensual lien by Creditor Trustee.

At the August 10, 2011 hearing on the matter, the bankruptcy court stated:

> With respect to Ms. Todd's complaints, any issue as to what exemption she may have are not resolved in this settlement. . . .the point is all you're doing is settlement inter se. If, for example, she titled [sic] to the exemptions she claims, the estate doesn't get it. Is that -- everybody agrees that's the correct -- analysis.

Counsel for Creditor Trustee responded "Yes." Liskowki stated:

"I agree completely. I don't think this resolve [sic] any issues with the exemptions." The bankruptcy court then said:

> Everybody agrees. All right. So to the extent there are exemptions, those exemption issues are preserved. If you have outstanding objections to exemptions, you better bring them back on calendar. Otherwise, the exemptions stand.

Neither the Rule 9019 Settlement nor the Rule 9019 Settlement Order contained any provision regarding Debtor's exemption rights nor did it provide for the carve-out of any funds in the SSB Account pending the determination of those rights. The order provided that Solomon Smith Barney accept any and all instructions concerning transactions in the SSB Account from Whinery, "as Creditor Trustee, who is the owner of the accounts as of the date of this Order." Finally, although the funds in the SSB Account were no longer property of Debtor's estate per the settlement's plain terms, the bankruptcy court did not expressly retain jurisdiction to decide Debtor's exemption rights in those funds. Debtor and Aubrey appealed the Rule 9019 Settlement Order to the Nevada district court by filing a NOA in Lodgebuilder's bankruptcy case and not their own. Lodgebuilder did not file a NOA of the order. The Nevada district court dismissed the appeal in May 2012, finding that neither Debtor nor Aubrey had standing.[4]

Relying on the Rule 9019 Settlement Order, Creditor Trustee withdrew funds from the SSB Account and disbursed those funds to

---

[4] We take judicial notice of the dismissal which was docketed and imaged in Bankr. Case No. NV-09-14103 at Dkt. No. 289. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-11-

the chapter 7 trustee and others pursuant to the terms of the settlement and FDHC's confirmed chapter 11 plan.

In late November 2011, Creditor Trustee filed a renewed objection to Debtor's homestead exemption. Debtor responded, arguing that her claims of exemption were contained in the Schedule C that she filed on April 30, 2009.

Debtor then filed an emergency motion for turnover of funds based on the exemptions claimed in her "Corrected & Amended" Schedule C. Debtor asserted that the Settlement Proceeds were exempt under N.R.S. § 21.090(1)(w), and argued that the entire amount was reasonably necessary for her support.

Creditor Trustee responded, arguing that Debtor had failed to preserve her exemption for loss of future earnings because, among other things, the "Corrected & Amended" Schedule C had not been docketed as an amendment. Creditor Trustee further submitted that under the Rule 9019 Settlement with the chapter 7 trustee, the funds in the SSB Account belonged to the FDHC estate. Creditor Trustee maintained that Debtor could not now claim an exemption since the funds had already been transferred to FDHC and administered per the terms of the settlement agreement. Based on these arguments, Creditor Trustee asserted that the doctrines of res judicata, judicial estoppel, and mootness barred Debtor's motion. Finally, Creditor Trustee contended that creditors of Debtor's estate and FDHC's estate would be prejudiced due to Debtor's late amendment of her Schedule C.

In April 2012, the bankruptcy court held a hearing regarding Debtor's exemptions. In responding to the prejudice

concerns raised by Creditor Trustee, the court held that, although Debtor's attached January amendment was not filed in compliance with the Rules, it was sufficient to give Creditor Trustee notice of her intent to claim the exemptions. The bankruptcy court ordered Debtor to properly file the exemptions. Despite the court's directive, Debtor did not file a separately docketed Amended Schedule C listing an exemption for loss of future earnings.

On May 8, 2012, at a status hearing, the court again told Debtor to file an official amendment to the claim of exemption and gave her a deadline to do so. About two weeks later, Debtor filed a "Debtor's Resubmission of Amended Exemptions" with an attached Schedule C listing "Payments for comp. for future earnings" in the amount of $1,122,384.00. Debtor did not file a separately docketed amended Schedule C.

Creditor Trustee then filed a "Notice of Creditor Trustee's Objection To Debtor's Alleged Exemptions" in which he objected to Debtor's loss of future earnings exemption and others as well.

Subsequently, Creditor Trustee filed a Motion for Summary Judgment (MSJ) on the issue of whether Debtor was entitled to an exemption on any portion of the Settlement Proceeds for loss of future earnings. Creditor Trustee argued that the Personal Injury Settlement agreement did not allocate the funds to any damage theory and did not mention "loss of future earnings." Creditor Trustee further argued that Debtor continued to receive substantial wages and other payments from Lodgebuilder after her accident. The bankruptcy court granted Creditor Trustee's MSJ

-13-

finding that none of the Settlement Proceeds were exempt as payment for compensation for loss of future earnings. Debtor appealed the MSJ ruling to the Nevada district court. There was no stay pending appeal. The district court reversed the bankruptcy court's decision, finding that there was a genuine issue of material fact whether the settlement was for lost wages or some other purpose.

The bankruptcy court then scheduled a trial on the matter. Both parties submitted trial briefs and the joint pre-trial statement in which they stipulated to certain facts for purposes of the trial. Debtor again claimed she was entitled to an exemption for loss of future earnings in the amount of $1,122,384.00. Creditor Trustee asserted that Debtor's claim for loss of future earnings should be zero and certainly no greater than $108,008.13. After the trial, the bankruptcy court took the matter under submission.

On May 6, 2014, the bankruptcy court issued its FFCL. After tracing the Settlement Proceeds which were commingled in the SSB Account with Debtor's pre-existing balance, and deducting amounts attributed to future medical expenses and bodily injury, the court concluded that Debtor was entitled to exempt $461,608.02 for loss of future earnings and that the entire amount was reasonably necessary for her support.

The bankruptcy court also found that although Debtor had never filed an amended Schedule C, Creditor Trustee's objection to her exemption for loss of future earnings was timely. The bankruptcy court opined that the matter should be determined on its merits, not prejudicing either party for any apparent

-14-

failure to abide by the Bankruptcy Code and Rules.

Finally, the bankruptcy court found that the permanent injunction imposed by the Arizona bankruptcy court did not preclude Debtor from litigating her entitlement to exempt the Settlement Proceeds in the SSB Account. The court did not address the impact of the Rule 9019 Settlement on Debtor's exemption rights apparently because it thought those rights were properly reserved by virtue of the parties' consent to preserve them at the August 10, 2011 hearing. The bankruptcy court entered the judgment on the same day it issued the FFCL.

Debtor filed a timely appeal and Creditor Trustee filed a timely cross-appeal. Creditor Trustee filed a Motion to Alter or Amend which the bankruptcy court denied on September 29, 2014. Creditor Trustee then filed an amended notice of cross appeal.

Debtor has since filed a motion for collection on the judgment regarding her exemption. Creditor Trustee filed a motion for a stay pending appeal in response. The bankruptcy court denied both motions.

## II. JURISDICTION

We address the bankruptcy court's jurisdiction and our own jurisdiction to decide the merits of the appeal below.

## III. ISSUE

Did the bankruptcy court have subject matter jurisdiction to decide Debtor's exemption claim for loss of future earnings after it entered the Rule 9019 Settlement Order?

## IV. STANDARD OF REVIEW

We review de novo questions of subject matter jurisdiction.

-15-

Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1193 (9th Cir. 2005).

## V.  DISCUSSION

We are required to consider the presence or absence of subject matter jurisdiction sua sponte. Cannon v. Haw. Corp. (In re Haw. Corp.), 796 F.2d 1139, 1141 (9th Cir. 1986). The bankruptcy court's jurisdiction is grounded in, and limited by, statute. Kirton v. Valley Health Sys. (In re Valley Health Sys.), 471 B.R. 555, 563 (9th Cir. BAP 2012). Under 28 U.S.C. § 1334(e)(1), the bankruptcy court has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

The parties do not dispute that the SSB Account contained the Settlement Proceeds. The Rule 9019 Settlement entered into between Creditor Trustee and the chapter 7 trustee placed ownership of the SSB Account in FDHC's estate. When property is no longer property of the estate the court's jurisdiction ends. See In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); Elscint, Inc. v. First Wis. Fin. Corp. (Matter of Xonics, Inc.), 813 F.2d 127, 131 (7th Cir. 1987) (once property of the estate is sold, the bankruptcy court must obtain a new source of federal jurisdiction); see also Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990) ("A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. When property leaves the bankruptcy estate,

-16-

however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end."). Accordingly, once the bankruptcy court entered the Rule 9019 Settlement Order, the court's jurisdiction over the SSB Account lapsed since it was no longer property of the estate nor was it property of the Debtor. See 28 U.S.C. § 1334(e)(1); see also 28 U.S.C. § 157(b)(2)(B) (recognizing proceedings relating to "exemptions from property of the estate" as core proceedings over which the bankruptcy court has jurisdiction).

The Rule 9019 Settlement Order did not provide for the bankruptcy court's retention of jurisdiction over the SSB Account for purposes of determining Debtor's exemption rights. Further, although the bankruptcy court orally confirmed with Creditor Trustee and the chapter 7 trustee that Debtor's exemption rights in the SSB Account were preserved, that colloquy did not preserve such rights, nor did it cure the jurisdictional defect that confronts us. The parties cannot create subject matter jurisdiction by consent. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Subject matter jurisdiction, which involves a court's power to hear a case, "can never be forfeited or waived." Id. A court which lacks subject matter jurisdiction cannot hear the matter at all and must dismiss it.

The plain language of § 522(b) also demonstrates why the preservation of Debtor's exemption rights was ineffective. Section "522(b) provides that the debtor may exempt certain property 'from property of the estate'; obviously, then, an interest that is not possessed by the estate cannot be

-17-

exempted." See Owen, 500 U.S. at 308. Once the SSB Account was transferred out of Debtor's bankruptcy estate, there was nothing to exempt per the plain language of § 522(b).

Finally, we considered whether the bankruptcy court's jurisdiction to determine Debtor's exemption rights could survive under a "related to" jurisdictional analysis. "Related to" jurisdiction exists when "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (adopting the test in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). The United States Supreme Court endorsed Pacor's conceivability standard with the caveats that "related to" jurisdiction "cannot be limitless," and that the critical component of the Pacor test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Celotex Corp. v. Edwards, 514 U.S. 300, 308 & n.6 (1995).

"Related to" jurisdiction does not exist for essentially the same reason as noted above. Because the Rule 9019 Settlement transferred 100% ownership of the SSB Account to FDHC's estate, the chapter 7 trustee gave up any rights to the funds. Thus, the outcome of Debtor's claim to exemption rights in those funds could not impact creditor recoveries or impact or involve the chapter 7 trustee in her estate.

In sum, the bankruptcy court did not have subject matter jurisdiction to decide Debtor's exemption rights in the SSB Account which was no longer property of her estate. This

-18-

unexpected jurisdictional defect resulting from the Rule 9019 Settlement Order leaves us without authority to consider the merits of Debtor's exemption claim for loss of future earnings and the alleged allocation errors raised in this appeal. We express no opinion whether Debtor could successfully move to modify the Rule 9019 Settlement Order under Civil Rule 60(b)(6).

## VI. CONCLUSION

For the reasons stated, we VACATE the judgment and DISMISS this appeal.